```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
MUHAMMAD E. MILHOUSE, pro se,           :
                                        :
                                        :
                 Plaintiff,             :       MEMORANDUM & ORDER
                                        :       12-CV-6437 (DLI)(LB)
        -against-                       :
                                        :
THE RENAISSANCE MEN'S RESIDENCE         :
(S.C.O.) and THE DEPARTMENT OF          :
HOMELESS SERVICES,                      :
                                        :
                                        :
                 Defendants.            :
---------------------------------------------------------- x
```

**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se* plaintiff Muhammad E. Milhouse ("Plaintiff") brings this action against the private shelter where he previously resided and the New York City Department of Homeless Services ("DHS") pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and New York State Human Rights Law § 296. For the reasons set forth below, Plaintiff's request to proceed *in forma pauperis* is granted, the complaint is dismissed without prejudice, and Plaintiff is granted leave to file an amended complaint with the Court by no later than May 29, 2013.

## BACKGROUND

According to the complaint, in July 2012, Plaintiff resided at the Renaissance, a shelter which is located at 599 Ralph Avenue, Brooklyn, New York, and run by SCO Family of Services ("SCO"), a private organization that provides homeless services, along with other social services. (Compl. at 1, Docket Entry No. 1.) On July 19, 2012, while traveling back to the Renaissance from a DHS-sponsored housing fair, Plaintiff alleges that two SCO staff members made racially charged and sexually inappropriate comments and implied that they could impact Plaintiff's housing application. Specifically, Plaintiff alleges that the first staff member, Dorothy Hallmon,

used expletives and racially charged language, including the N-word, and stated, "you need to be kissing our asses;" he further alleges that Hallmon used insulting language to criticize the SCO's Program Director and another supervisor who, according to Hallmon, "loves helping you homeless mothers so much and especially you Mr. Milhouse." (*Id.* at 1-2.) Plaintiff also alleges that the second staff member, Lewis Green, told Plaintiff "you'll never leave this shelter before [Christmas] next or any other years," and suggested that performing sexual favors on him "will make things [] a whole lot quicker." (*Id.* at 1.)

Plaintiff immediately raised complaints about the July 19, 2012 exchange. Plaintiff attached to the complaint a "Resident Grievance Form," dated July 20, 2012, in which Plaintiff wrote, among other things, that Hallmon and Green "made t[h]reats about [Plaintiff's] housing app." (*Id.* at 8-11.) Also attached to the complaint is an SCO "Grievance Receipt and Disposition" form, dated July 24, 2012, which indicates that SCO conducted an investigation of the July 19, 2012 exchange, "the issue was corrected with personnel," and "the information pertaining to actions is confidential." (*Id.* at 4.) Additionally, Plaintiff alleges that, on July 28, 2012, he complained about the July 19, 2012 exchange to a DHS employee, V. Mosley, who promised an investigation and further assistance, "but no said aid was offered or given by Mrs. V. Mosley still to date." (*Id.* at 3.)

Separate from the July 19, 2012 exchange, Plaintiff alleges that his housing application was also impacted by "Housing Specialist Supervisor Mrs. Rocheline Georges of Social Service, along with Doctor Imran Faisal," both of whom "falsified [Plaintiff's] housing app.[,] doctored [Plaintiff's] paper work[,] frauded [Plaintiff's] 2010 E form[,] as well as printed false information in Plaintiff's whole filing process date[d] June 13, 2012." (*Id.* at 2.) Attached to the complaint is a June 13, 2012 letter signed by both Georges and Faisal. (*Id.* at 5.) The June 13, 2012 letter,

which is addressed to a "fact reviewer at Human Resources Administration," states, "[Plaintiff] is refusing to take his medication. . . .  However, please note that [Plaintiff] is stable enough to be referred to housing.  He will benefit by a new environment and thrive in the appropriate setting." (*Id.*)  A Psychiatry Comprehensive Assessment prepared by Dr. Faisal is also attached to the complaint.  (*Id.* at 6-7.)

Plaintiff apparently is no longer a resident at the Renaissance.  The complaint, dated December 27, 2012, indicates that Plaintiff resides at 651 West 168th Street, New York, New York, which is the address of the Fort Washington Men's Shelter, a residence for homeless men with mental illness.  (*Id.* at 3.)  Additionally, on March 1, 2013, the Court received a notice from Plaintiff indicating that he currently resides at Atlantic House Men's Shelter, 2402 Atlantic Avenue, Brooklyn, New York.  (Docket Entry No. 4.)

Plaintiff seeks money damages of $100 million from each defendant and a permanent injunction removing unidentified individuals from "employment which provides services for homeless people and any other place which aids in public welfare."  (*Id.* at 2.)

## DISCUSSION

In reviewing the complaint, the Court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  However, Section 1915(e)(2)(B) of Title 28 of the United States Code requires a district court to dismiss a case if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which

relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

The FHA forbids, among other things, "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). In addition, the FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" any right protected by the Act. 42 U.S.C. § 3617. "Broadly speaking, FHA . . . claims may be prosecuted on the basis of (i) disparate treatment, *i.e.*, that plaintiffs were treated differently because of their membership in a protected class, or on the basis of (ii) disparate impact, *i.e.*, that the defendant's practices have a proportionally greater negative impact on minority populations." *M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 574 (E.D.N.Y. 2010) (citing *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995)); *see also Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 (S.D.N.Y. 2012) (noting that NYSHRL housing discrimination claims "are analyzed under the same standard as claims made under the FHA").

Here, as to SCO, Plaintiff alleges that, on July 19, 2012, while Plaintiff was traveling back to the Renaissance, two SCO staff members made racially abusive and sexually inappropriate remarks and implied that they could influence his housing application. Yet Plaintiff does not allege that these individuals' animus or subsequent actions actually impacted Plaintiff's housing application or altered the conditions of his housing and the provision of services at the Renaissance. Instead, the complaint suggests that Plaintiff successfully complained about the employees' remarks, the situation was addressed by SCO, and Plaintiff successfully transferred out of the Renaissance. Moreover, although Plaintiff alleges that Georges and Faisal lied and

4

falsified certain paperwork, the June 13, 2012 letter, in which Georges and Faisal opined that Plaintiff "will benefit by a new environment and thrive in the appropriate setting," suggests that Georges and Faisal actually provided Plaintiff with a positive recommendation for residential placement.

As to DHS, the only allegation in the complaint against it is that Plaintiff complained to a DHS employee about the July 19, 2012 exchange, but that employee failed to follow up to Plaintiff's satisfaction. This statement does not impute liability to DHS under the FHA. Moreover, to the extent Plaintiff's claim can be construed as arising under the Civil Rights Act, 42 U.S.C. § 1983 ("§ 1983"), DHS is a New York City agency, and, therefore, is not a "person" for purposes of § 1983 liability. *See Caractor v. City of New York Dept. of Homeless Servs.*, 2012 WL 3127181, at *2 (S.D.N.Y. July 27, 2012) (noting that "New York City departments, as distinct from the City itself, lack the capacity to be sued" (quoting *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008)). Additionally, liability under § 1983 exists only if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Wray v. City of New York*, 490 F.3d 189, 195-96 (2d Cir. 2007). Plaintiff has not suggested any municipal policy or custom that would give rise to *Monell* liability. As such, the complaint is dismissed as to DHS, without leave to amend as such amendment would be futile. 28 U.S.C. § 1915(e)(2)(B).

In sum, under these circumstances, the Court cannot determine whether Plaintiff has suffered impermissible discrimination in violation of the FHA. Accordingly, in light of his *pro se* status, the instant complaint is dismissed and Plaintiff is granted leave to file an amended complaint to identify any continuing impact on Plaintiff's housing application or the conditions or provision of services at his residence.

**CONCLUSION**

Plaintiff's request to proceed *in forma pauperis* is granted. The instant complaint is dismissed without prejudice and with leave to file an amended complaint. In order for this action to continue, PLAINTIFF MUST FILE AN AMENDED COMPLAINT NO LATER THAN MAY 29, 2013. The amended complaint must be captioned, "Amended Complaint," and shall bear the same docket number as this Order. For the convenience of Plaintiff, a copy of instructions on "How to Amend Your Complaint" is attached. No summons shall issue at this time, and all further proceedings shall be stayed. If Plaintiff fails to comply with this Order within the time allowed, the complaint will be dismissed with prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court is directed to hold the closing of this case in abeyance pending Plaintiff's compliance with this Order.

SO ORDERED.

Dated: Brooklyn, New York
April 29, 2013

_____/s/_____
DORA L. IRIZARRY
United States District Judge